Sharp *v*. West.

Opinion delivered March 12, 1928.

1. Brokers—weight of evidence.—The weight of evidence was a question for the jury in a real estate broker's action for a commission.

2. Trial—credibility of witnesses.—The credibility of witnesses was a question for the jury in a real estate broker's action for commission.

3. Appeal and error—conclusiveness of jury's finding.—A jury's finding, if supported by substantial evidence, is conclusive on appeal.

4. Brokers—when agency not exclusive.—An owner's agreement to pay a real estate broker a specified commission if he would find a purchaser, *held* not to create an exclusive agency for the sale of the property.

5. Brokers—right to commission.—A broker, in order to be entitled to a commission, is bound to procure a purchaser ready, able, and willing to buy the property.

6. Brokers—procurement of purchaser—evidence.—Where a real estate broker procured a purchaser, and this purchaser bought the land, this was the best possible proof that the broker procured a purchaser who was ready, able, and willing to buy the property.

7. Brokers — procurement of purchaser — evidence.—Evidence *held* sufficient to sustain a finding that a real estate broker procured a purchaser to whom the land was sold.

8. Appeal and error—remarks of court—prejudice.—Remarks of the court in ruling on a question put to a witness, that, if defend-

ant's broker procured a purchaser and sale was made to him, the fact that it was made by canceling defendant's contract with the bank and letting the bank convey to the purchaser would not prevent the broker from recovering his commissions, *held* not prejudicial.

9. BROKERS—INSTRUCTION.—An instruction that the burden was upon a real estate broker suing the owner of land for a commission to show that he did procure a purchaser, *held* not error.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; affirmed.

*W. R. Morrow,* for appellant.

*L. A. Hardin,* for appellee.

MEHAFFY, J. The appellee brought this suit, alleging that he procured a purchaser for certain property of appellant, under a contract by which he was to be paid a commission of $75 for procuring a purchaser at a price of $2,500, terms to be agreed on between appellant and purchaser. The appellant had purchased the property from the Bankers' Trust Company for $2,100, paying $200 cash and agreeing to pay $20 a month. He was behind in his monthly payments, and wanted to sell the property, and agreed with appellee that, if appellee would find him a purchaser, he would pay him, as commissions, $25 cash and $12.50 a month for four months.

There was some conflict in the evidence, but the weight of the evidence and the credibility of the witnesses were questions for the jury, and if the jury's finding is supported by any substantial evidence it is conclusive on this court.

Appellant contends, first, that, as there was no exclusive agency for the sale of the property and no definite time within which West was to find a purchaser, the authority was revoked. He contends that, before an agent is entitled to commissions, he must procure a purchaser ready, able, and willing to buy.

Appellant is correct in his statement that there was no exclusive agency, and he is also correct in his statement that an agent, in order to be entitled to commissions, must procure a purchaser ready, able, and willing to buy. The proof shows that appellee did procure a

purchaser, and that this purchaser bought the property. There could be no better evidence of one's being ready, able and willing to buy than the fact that he did actually buy, as the purchaser secured by West did in this case. Appellant, however, contends that the evidence is not legally sufficient to show that appellee procured the purchaser to whom the property was sold.

The undisputed evidence shows that there was a contract, and that the commission was to be $75. Appellee testified that he advertised the property in the Democrat, and showed it to two or three persons, one of them being Mr. Warrington, and that Mr. Browning came with Mr. Warrington and looked at the property. Appellee also testified that Browning told him he was ready to buy the place; that he wanted to close the deal, and appellee then got in touch with Mr. Sharp. Browning corroborates appellee in this. The undisputed proof shows that the property was sold to Browning. Sharp had bought from the bank, was behind with his payments, and, after West had got Browning interested, Sharp went to the bank and requested the bank to refund the money that he had paid and take a new contract with Browning. The bank declined to do this, but finally agreed with Sharp that it would give him credit for the amount he had paid on the price of some lots on the pike. This was done, and the contract between Sharp and the bank was canceled, and the bank made a contract with Browning by which Browning was to pay $2,500 for the property. The cancellation of the Sharp contract and the sale by the bank to Browning was all one transaction, and the sale was made to a purchaser procured by West, and Sharp received the benefit exactly as he would if he had sold directly to Browning. This testimony about the transaction with the bank is undisputed.

The appellant also complains of the remarks made by the court. Appellant's attorney asked a question of Risley, and the court stated: "I do not think that is material in this case; it is taking up unnecessary time." Whereupon the attorney stated: "I am trying to prove

how the property was sold, and by whom.'' The court then said: ''There is no dispute about to whom it was sold, is there?'' and then stated: ''As far as that is concerned, if the sale was made to Browning, and the plaintiff procured the purchaser and brought about the sale, I am going to instruct the jury to find for the plaintiff if they find those facts. I will not allow any such defense that the sale was made to the bank, so far as this case goes.'' Appellant insists that the above remarks of the court were prejudicial.

We do not think so. We have already said that the cancellation of Sharp's contract and the sale to the bank was but one transaction. The remarks of the court amounted to no more than saying that, if West procured a purchaser, and the sale was made to him, the fact that it was made by canceling Sharp's contract and letting the bank convey to Browning would not prevent West from recovering his commissions.

Of course, the court could not charge the jury with regard to matters of fact, but these are facts about which there was no dispute, and it was therefore a question of law and proper to tell the jury that the manner in which the contracts were made was immaterial; that, if West procured a purchaser, and the purchaser bought the property, the fact that it was made in the manner in which it was was immaterial. The court properly instructed the jury, telling them that, before a real estate broker was entitled to a commission for selling real estate or procuring a purchaser, he must procure a purchaser, and must, by his efforts, bring about a sale of the property, and that the burden was upon the plaintiff to show that he did procure a purchaser, and this must be shown by a preponderance of the evidence.

The court fully instructed the jury, and we find no error, and the judgment is therefore affirmed.